48766. BUCK CREEK INDUSTRIES, INC. v. WILLIAMS-EAST, INC. et al.

HALL, Presiding Judge. This dispute between a carpet yarn manufacturer and one of its customers comes here on appeal from a jury verdict for the customer.

The manufacturer, Buck Creek Industries, Inc. (hereinafter,

"Buck Creek") sued Williams-East, Inc. on unpaid invoices and unauthorized deductions on yarn purchases. Fred K. Williams, the defendant-company's primary owner, was sued on his personal guarantee of the corporate debt. The primary defense was that the yarn actually supplied was defective, being alternately thick and thin in spots and weakened in strength, so that it would not run smoothly through the company's tufting machines, and yielded streaked carpet goods salable only as second quality carpets, or "seconds." The corporate defendant filed one counterclaim for about $17,000 loss on the carpets, and another for $100,000 for business losses caused by Buck Creek's refusal after this event to supply yarns to the corporate defendant.

At trial there was defense testimony that the yarn was provided on creels and that it was not feasible to examine the full length of the yarn for possible flaws in the lengths buried down toward the core in the inner windings; that the streaked nature of the carpets was not detectable until the carpet had been tufted, backed and dyed, by which time defendant corporation had irretrievably made a full investment in materials and labor in the goods; that when the difficulty was discovered with some of the yarn defendants notified Buck Creek and were told that they might take their choice of having the yarn replaced after a delay of some weeks, or of making carpets with it anyway and being reimbursed by Buck Creek for their loss of manufacturing efficiency and excessive "down time" caused by the uneven threads. Under the pressure of outstanding orders they needed to fill without delay, defendants opted for the second alternative, and ended their manufacturing run with 5,907.44 square yards of second quality carpet. This carpet (intended to be first quality) was manufactured specifically for delivery to identified customers. The contract price was $5.35 per square yard or $31,941.85; the actual cost of materials in the carpets was $24,326.27; the carpets turned out to be "seconds"; after much delay the defendant succeeded in selling the goods elsewhere for a maximum of only $14,928.04. There was testimony that there was no problem with any carpet component other than the yarn.

Concerning the alleged business losses for termination of yarn supply, Mr. Williams testified for Williams-East, Inc. that for the first four months of the pertinent year the company showed a profit of $21,000, whereas for the remainder of the year, during which time they had the yarn supply problem, the company lost

$164,000.

There was other testimony addressed to points in the litigation not here involved.

The verdict of the jury was: "We, the jury, find in favor of the defendants and award *him* the sum of Two Thousand Dollars." (Emphasis supplied.) The trial court entered the following judgment: "The verdict of the jury is made the judgment of the Court finding in favor of defendants and defendant Williams-East, Inc. is awarded the sum of $2,000.00 on it's [sic] counterclaim against Buck Creek Industries, Inc., plus $————costs of this proceeding."

On appeal, Buck Creek raises six enumerations of error, numbers 1, 2, 3 and 6 of which raised the general grounds. Buck Creek makes no argument supporting these enumerations insofar as they refer to the verdict for both defendants on plaintiff's claim. For that reason, the enumerations are deemed abandoned in that part (*Corbin v. Gulf Ins. Co.,* 125 Ga. App. 281, 282 (187 SE2d 312)), and we consider them to raise only a question concerning evidence in support of the counterclaims on which Williams-East, Inc. was awarded $2,000, which is the point to which plaintiff does address argument. Plaintiff argues that there was no evidence from which the jury could arrive at the market value of the *defective* yarn, and since the trial judge charged that the difference between that value and the value of the goods ordered would be the pertinent measure of damages on the first counterclaim, necessarily the jury had no evidence on which to base the $2,000 damage figure. The flaw in plaintiff's argument is that the specified charge was not the only charge on damages. There were other general charges which would authorize the jury to award damages in accord with the parties' alleged loss of efficiency and down-time agreement, as well as authorizing a verdict for damages on the other counterclaim for business losses as a result of the termination of yarn supply. Williams-East, Inc.'s figure for loss of efficiency and down-time on one batch of yarn alone was over $2,000 and this testimony adequately supports the verdict, which will be allowed to stand if there is some evidence supporting it on either counterclaim. Cf. *Smith v. Crane,* 154 Ga. 243 (113 SE 803). The verdict was authorized by the evidence, and there is no merit in Enumerations 1, 2, 3 and 6.

Enumeration 4 claims that the verdict did not conform to and was not authorized by the pleading, because the award of $2,000 to

"him" could only mean to the individual defendant Williams, who had laid no counterclaim. Contrary to Buck Creek's position, the rule of law involved here is not the rule recognized in *Frady v. Frady,* 222 Ga. 184 (149 SE2d 324) and *Barbee v. Barbee,* 201 Ga. 763 (41 SE2d 126), that a verdict cannot be entered for relief not prayed for. Rather, we are concerned with the construction to be given an ambiguous verdict. A verdict which is ambiguous or subject to more than one construction should be given that which will uphold it. *Atlantic & Birmingham R. Co. v. Brown,* 129 Ga. 622 (4) (59 SE 278); *Barlow v. Story,* 120 Ga. App. 48, 51 (169 SE2d 660). Verdicts shall have a reasonable construction and shall not be avoided unless necessary. Code § 110-105. In light of the close connection between Mr. Williams and the corporation, of which he was majority owner and president, and the fact, for example, that on numerous occasions plaintiff's rebuttal witness and on at least one occasion plaintiff's attorney, referred to the company as "he," as if Mr. Williams personified it, we think the reasonable intendment of this verdict was that the company should take $2,000 on one of its counterclaims. This was the judgment entered by the trial court, and the entry was without error.

Enumeration 5, which asserts that the judgment entered did not conform to the verdict because the judgment stated that damages went to the corporate defendant, is without merit under the reasoning set out above. The judgment must follow the true intent of the finding. Code § 110-301; *Taylor v. Taylor,* 212 Ga. 637-638 (94 SE2d 744).

Moreover, the record does not reflect any objection raised at trial by Buck Creek to the verdict or to the judgment entered upon it. Therefore, though we have considered Enumerations 4 and 5, they are procedurally barred because they may not be raised for the first time here on appeal. *Barlow v. Story,* supra; *Calhoun v. Babcock Bros. Lumber Co.,* 198 Ga. 74, 83 (30 SE2d 872).

The six enumerations of error having been determined to be without merit, the judgment will be affirmed.

*Judgment affirmed. Evans and Clark, JJ., concur.*

Argued November 7, 1973 — Decided January 23, 1974 — Rehearing denied February 8, 1974.

*Richardson, Chenggis & Constantinides, Robert P. Mallis,* for appellant.

*Gerstein, Carter & Chesnut, Edward E. Carter,* for appellees.